**In the Matter of Ronnie Ray MORRISON.**

**STATE TEACHERS RETIREMENT BOARD OF OHIO, Creditor-Appellant,**

v.

**Ronnie Ray MORRISON, Debtor-Appellee.**

**Bankruptcy No. C–2–81–399.**

United States District Court, S.D. Ohio, E.D.

March 18, 1983.

---

Stephen R. Buchenroth, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for State Teachers Retirement System of Ohio.

John Dilenschneider and Robert Trafford, Timothy Grady, Lita Miller, Porter, Wright, Morris & Arthur, Richard Smith, Columbus, Ohio, for Frank M. Pees, Standing Chapter 13 Trustee.

## OPINION AND ORDER

DUNCAN, District Judge.

This matter is before the Court on the motion of the Trustee, Frank M. Pees, for a rehearing on the memorandum and order entered by this Court on June 24, 1982, in light of the Second Circuit's holding in *In re Taddeo,* 685 F.2d 24 Case No. 734 (2nd Cir.1982). The parties have fully briefed this matter, and the Court has reviewed all the relevant case law. The Court now believes that it incorrectly decided the matter before it on June 24, 1982. The judgment initially rendered by this Court is therefore vacated, and the January 14, 1981 order of the Bankruptcy Court is hereby affirmed.

### I. *Statement of Facts.*

The facts relevant to this appeal are not in dispute. On or about May 3, 1978, the appellees purchased real property in Columbus, Ohio, which was used as the debtor's principal residence. In order to finance the purchase of this property the debtor executed and delivered to Kissel Corporation a mortgage note in the sum of $20,200.00. The debtor also executed a first mortgage deed to secure the note. The note and mortgage were subsequently assigned to appellant, State Teachers Retirement Board of Ohio. The appellant is the present holder in due course of the note and the present mortgagee under the mortgage.

The note in question contained an acceleration clause which provided that upon default the entire principal and accrued interest would become due.[1] The debtor failed to make the monthly mortgage payment due on or before April 1, 1980. Thereafter, the debtor failed to make the next five payments due and owing on the mortgage note.

On September 18, 1980, the appellant instituted an action to foreclose on the mortgage in Case No. 80CV–09–5004 in the Common Pleas Court of Franklin County, Ohio. At the time this foreclosure action was commenced, the appellant elected to accelerate the note and mortgage pursuant to the acceleration clause and sought to recover the entire principal and accrued interest then due.

On November 4, the debtor filed a Chapter 13 bankruptcy petition and plan. At that time the debtor listed his residence at 378 South Warren Avenue as an asset, and appellant was listed as a secured creditor based on its note and mortgage. Under the debtor's Chapter 13 plan, the debtor was required to pay to the Trustee $72, later increased to $77.50, weekly for an unspecified period of time. From this amount, the Trustee was to pay the current mortgage payments as well as preconfirmation arrearage. (Record on Appeal, Exhibit 3).

Thereafter, on or about December 19, 1980, the appellant filed its Proof of Claim, Rejection of and Objection to the Debtor's

---

1. The acceleration clause contained the following language:

   If any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such install- ment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note.

Plan (Record on Appeal, Exhibit 4). The appellant objected to confirmation of the plan on the grounds that the "arrearage" under the mortgage was not $1,752.39 as stated by the debtor in his plan, but the entire sum of $21,408.50 then past due on the note and mortgage as a result of the acceleration of the note on September 18, 1980.

A first meeting of creditors and a hearing on confirmation of the debtor's plan were held on December 18, 1980. Appellant appeared at both the first meeting of creditors and the confirmation hearing and argued its objections to the proposed plan at that time.

On January 14, 1981, Bankruptcy Judge R.J. Sidman issued his order overruling appellants' objections to confirmation. (Record on Appeal, Exhibit 7). On February 2, 1981, the Bankruptcy Judge ordered confirmation of the debtor's Chapter 13 plan. (Record on Appeal, Exhibit 9). With respect to appellants' objections to the plan, the Bankruptcy Court specifically ruled that the pre-petition exercise of "an acceleration clause does not foreclose the debtor's right to cure his real estate arrearage through the provisions of § 1322." (Record on Appeal, Exhibit 7, pp. 1–2).

The appellants then filed a notice of appeal from the order of the Bankruptcy Judge confirming the debtor's Chapter 13 plan. Thereafter, on June 24, 1982, this Court, relying largely on the decision in *In re Soderlund*, 18 B.R. 12 (D.C.S.D.Ohio 1981), reversed the Bankruptcy Court and remanded this case. The trustee in bankruptcy, who was and is a party to these proceedings by virtue of 11 U.S.C. § 1302(a), then filed a motion for a rehearing on this Court's June 24 order pursuant to Rule 812 of the Rules of Bankruptcy Procedure. The Court found the trustee's motion well taken and thereafter directed the parties to file supplemental briefs on the issue of whether the Court should reconsider its June 24, 1982 order in light of the Second Circuit's holding in *In re Taddeo*, 685 F.2d 24 (1982).

## II. *Analysis*

In its order of June 24, 1982, this Court, relying on the decision in *In re Soderlund*, held that neither § 1322(b)(3) nor § 1322(b)(5)[2] were available to a debtor to cure a default on a note and mortgage which had been accelerated as in the case where a foreclosure action was commenced. More specifically, the Court in *Soderlund* noted that § 1322(b)(5) was not available to cure "[d]efaults on debts which became due *before* the last payment under a chapter 13 plan . . . ." *In re LaPaglia*, 8 B.R. 937, 940 (Bkrtcy.E.D.N.Y.1981). Therefore, since under Ohio law, the entire amount of indebtedness under a note and mortgage becomes due when the note is accelerated, *Nixon v. Buckeye Building & Loan Co.*, 18 Ohio L.Abs. 261 (Franklin Cty.Ct.App.1934), debtors cannot rely on § 1322(b)(5) to cure their default. Subsequent to the decision in *Soderlund*, additional case law has developed. This Court now believes that recent cases adopt a rule of law that should be followed in the instant case.

This Court begins its analysis of this case by noting that the issue to be decided is the appropriate statutory construction of

**2.** Section 1322 of Title 11 provides, in part:
    (b) Subject to subsections (a) and (c) of this section, the plan may

    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or the holders of unsecured claims;
    (3) provide for the curing or waiving of any default;

    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and mainte-

nance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The trustee in this case does not challenge that portion of the *Soderlund* decision holding § 1322(b)(3) inapplicable to this situation. This Court therefore confines its discussion to whether a debtor may cure a default under § 1322(b)(5) on a note and mortgage which has been accelerated prior to filing of a petition in bankruptcy.

§ 1322(b)(5)[3] of the Bankruptcy Code which provides for the treatment of real estate mortgages in a Chapter 13 plan. More specifically, squarely presented to this Court for decision is the question of whether a debtor may cure a pre-bankruptcy petition default of a note and mortgage, when pursuant to state law and the terms of the note itself, a mortgagee elects to accelerate the note and mortgage.

A substantial body of case law has evolved recently which holds that § 1322(b)(5) permits Chapter 13 debtors to cure defaults and to reinstate the original payment schedules of their home mortgage notes, notwithstanding the acceleration of the mortgage debts prior to their filings for relief. *In re Taddeo,* 9 B.R. 299 (Bkrtcy.E. D.N.Y.1981), *aff'd* 15 B.R. 273 (D.C.E.D.N. Y.1981), *aff'd* 685 F.2d 24 (2d Cir.1982); *In re Davis,* 16 B.R. 473 (D.C.Kan.1981); *In re Smith,* 19 B.R. 592, 8 Bankr.Ct.Dec. 1340 (CRR) (Bkrtcy.N.D.Ga.1982); *In re Hardin,* 16 B.R. 810 (Bkrtcy.N.D.Tex.1982); *In re Custer,* 18 B.R. 842 (Bkrtcy.S.D.Ohio, W.Div., 1982); *In re Rippe,* 14 B.R. 367 (Bkrtcy.S.D.Fla.1981); *In re Sapp,* 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981).[4]

Perhaps the most persuasive decision, as well as the only Court of Appeals decision in this area is *In re Taddeo,* 9 B.R. 299 (Bkrtcy.E.D.N.Y.1981), *aff'd.* 15 B.R. 273 (D.C.E.D.N.Y.1981), *aff'd.* 685 F.2d 24 (2d Cir.1982).[5]

**3.** The appellant argues that pursuant to the clear language of § 1322(b)(5) the debtor cannot cure his default because the last payment on the note is not due after the final payment under the plan as is required by § 1322(b)(5). Furthermore, the appellant argues that as a result of the pre-petition acceleration the entire amount of the note became due immediately. This argument begs the question, however, since arguably "curing a default" under § 1322(b)(5) would include de-acceleration in which case the last payment on the note is due according to the original terms of the note.

As the Second Circuit noted in *Taddeo:*

DiPierro argues that the Taddeos cannot use § 1322(b)(5) to cure their default and maintain payments on her mortgage because (b)(5) applies only to claims whose last payment is due after the last payment under the plan is due. DiPierro maintains her acceleration of the mortgage makes all payments due now. *See In re Williams,* 11 B.R. 504 (Bkrtcy.S.D.Tex.1981); *In re LaPaglia,* 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981). But we hold that the concept of "cure" in § 1322(b)(5) contains the power to de-accelerate. Therefore, the application of that section de-accelerates the mortgage and returns it to its 15-year maturity.

*Taddeo,* 685 F.2d at 28.

**4.** The appellant in this case cites us to a number of cases in which the opposite result has been reached. *See, e.g., In re LaPaglia,* 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981); *In re Land,* 14 B.R. Rep. 132 (Bkrtcy.N.D.Ohio 1981); *In re Anthony Harrison,* Case No. 2–81–04746 (Bankr.S.D. Ohio, E.D., unreported). While this Court acknowledges that there is some difference of opinion as to the appropriate interpretation of § 1322(b)(5), the Court does not feel bound to follow those decisions cited by appellant for a number of reasons. First, the greater weight of authority seems to allow for the "de-acceleration" of mortgage payments under § 1322(b)(5). Second, the decision in *In re LaPaglia,* which was in part relied upon by Judge Kinneary in his *Soderlund* decision, was impliedly, if not expressly, overruled by the recent Second Circuit case of *In re Taddeo,* 685 F.2d 24 (1982). Finally, a number of cases relied on by appellants present a situation where a final decree, or a foreclosure judgment was obtained prior to the filing of a bankruptcy petition. *See, e.g., In re Anthony Harrison,* Case No. 2–81–04746 (Bankr.S.D.Ohio 1982); *In re Pearson,* 10 B.R. 189, 195 (Bkrtcy.E.D.N. Y.1981). This Court believes those cases are distinguishable from a case in which the debtor is allowed to cure a pre-petition default after the mere filing of a foreclosure action. *See In re Davis,* 16 B.R. 473, 475 (D.C.D.Kan.1981); 5 Collier on Bankruptcy, § 1322.01(E) (15th ed. 1981). This Court does not express any opinion on the question of whether a debtor may cure a default after a state court judgment of foreclosure since that factual setting is not before this Court. The Court does acknowledge, however, that that fact situation would entail an evaluation of slightly different policy considerations.

**5.** The parties' memoranda in this case disagree over the weight that should be accorded this Second Circuit decision. The appellee argues that absent a contrary decision of the court of appeals in this circuit, the decision of the Second Circuit should be determinative of this case. Supplemental Brief of Appellee, at 5 (citing *Gustafson v. Wolferman, Inc.,* 73 F.Supp. 186, 192 (W.D.Mo.1947)). Appellants, however, urge this Court to reject the *Taddeo* decision as erroneous, and further urge this Court to continue to follow the rule established in *Soderlund.* While it is true that this Court is not technically bound to follow the Second Circuit's holding in *Taddeo,* this Court believes the decision in that case is sound. Moreover,

█ The district court in *Taddeo* rejected the argument proffered by the appellants here that the operation of state law removed an accelerated home mortgage obligation from the application of 11 U.S.C. § 1322(b)(5).[6] Rather, the court in *Taddeo* permitted a debtor to cure pre-petition defaults and to reinstate the original payment schedule despite the mortgagees' acceleration. 15 B.R. at 275–6.

It is clear, therefore, that a rigid adherence to state law in interpreting 11 U.S.C. § 1322(b)(5) is neither intended nor compelled by the Bankruptcy Code.[7] Rather as the court in *Taddeo* noted,

> In arriving at a fair construction of 1322(b)5, it is first necessary to dispel the myth that once a mortgage has been accelerated [pursuant to state law] a feder-

al bankruptcy court can never undo the acceleration.
9 B.R. at 302.

█ In arriving at a decision to allow de-acceleration of mortgage note under § 1322(b)(5), despite the initiation of foreclosure proceedings under state law, the Second Circuit, as well as other courts considering this same problem, rely in part on the legislative history and the policies which underlie Chapter 13 of the Bankruptcy Code.[8] Perhaps the most important policy served by allowing a debtor to cure a default on a mortgage note is the overriding rehabilitative purpose of Chapter 13.[9] Chapter 13 was intended to provide wage earners with the power to reorganize their debts so that they might retain their property and simultaneously repay their debts through a court-appointed trustee according to an approved plan. 11 U.S.C. § 1322(a) and § 1306(b).[10] This Court does not be-

---

where interpretation of a federal law of general application is concerned, considerations of fairness and uniformity of law would be best served if this Court were to give due consideration to a decision of a court of appeals of another circuit. This Court therefore chooses to follow the rule laid down by the Second Circuit in *In re Taddeo*.

**6.** Significant for the purposes of this case is the following language of the Bankruptcy Court in *Taddeo*:

> Under New York law, a foreclosed mortgage ordinarily merges in the foreclosure judgment upon actual sale of the property. That is title does not pass and the mortgage is not extinguished until there is a foreclosure sale. Since there has been neither final judgment of foreclosure nor sale of the property in the present case, the mortgage remains in existence and is thus subject to being cured under the provisions of 11 U.S.C. § 1322(b)(5).

9 B.R. at 306.

> Similarly, under Ohio law, neither the mortgage itself nor the lien it creates are extinguished by the filing of a foreclosure action, but rather the mortgage is extinguished only after a foreclosure sale of the premises. 37 Ohio Juris 2d Mortgages § 231 (1959).

**7.** Once again, the Second Circuit's opinion in *Taddeo* proves educative. In that case, the Second Circuit observed:

> We do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be primary beneficiaries of the new Code—to the harsher mercies of state law.

685 F.2d at 25.

**8.** A complete review of the legislative history need not be undertaken here. Suffice it to say that a number of courts which have addressed this same problem have surveyed the legislative history. *See, e.g., In re Taddeo*, 685 F.2d at 27–28; *In re Hardin*, 16 B.R. 810, 812 (Bkrtcy.N.D.Tex.1982); *In re Pearson*, 10 B.R. 189, 192 (Bkrtcy.E.D.N.Y.1981).

**9.** A number of courts have noted the basic policies of financial rehabilitation and relief without liquidation found in Chapter 13. Those courts have also noted that Chapter 13 should be construed liberally to effect those policies. Courts have also acknowledged that these liberal policies may result in a delay in the enforcement of, or impairment of, secured creditors' claims, including claims of mortgagees. *See, e.g., In re Freed & Co.*, 534 F.2d 1235, 1239 (6th Cir.1976); *Hallenbeck v. Penn Mutual Life Ins.*, 323 F.2d 566 (4th Cir.1963) (bankruptcy courts can enjoin the foreclosure of a mortgage on a debtor's residence); *see also Continental Ill. Bank v. Chicago R.I. & P. Ry.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935) (holding impairment of secured creditors' foreclosure remedy permissible).

**10.** As both parties readily admit, Chapter 13 is modeled after Chapter 11 which allows qualifying businesses to reform or rehabilitate themselves by setting up a plan for repayment of debts. This Court notes that there is an express provision in Chapter 11 which voids acceleration clauses. 11 U.S.C. § 1124(2). While the current problem would not have arisen if a similar provision were included in Chapter 13, this Court does not believe that the omission of such a provision indicates a contrary intent on

lieve a debtor's power to cure under § 1322(b)(5) can be limited by contractual acceleration clauses which undermine Chapter 13's fundamental rehabilitative purpose. As one court so aptly notes:

> In nearly every instance in which a homeowner debtor files a petition in Chapter 13, the mortgage debt has been accelerated. To suggest that such a debtor's remedy is limited to payment of the full amount of the mortgage debt is to render the remedy in § 1322(b)(5) unavailable to all but a select number of debtors.

*In re Thompson,* 17 B.R. 748, 753 (Bkrtcy. W.D.Mich.1982). Like the court in *Thompson* and the court in *Taddeo,* this Court is not now prepared to force consumer debtors into Chapter 7 by rendering Chapter 13 unavailable to a substantial number of homeowners who are encountering severe financial problems. This Court believes that the better rule, and the rule more in keeping with the goals of Chapter 13, is to permit a debtor under § 1322(b)(5) to cure a default in a residential mortgage which includes de-acceleration of mortgage previously accelerated and the reinstatement of the original mortgage payment schedule.

Therefore, the Court believes that its order of June 24, 1982, reversing the Bankruptcy Judge should be VACATED and the decision of the Bankruptcy Judge is hereby AFFIRMED.

So ORDERED.

Congress' part. Initially, Chapter 11 as a general matter provides much greater detail regarding debt modification. In addition, the legislative history of, and the policies underlying Chapter 13, support a finding that Chapter 13 debtors are entitled to avail themselves of the same curative powers as Chapter 11 business debtors. See, discussion of legislative history in *In re Taddeo,* 9 B.R. at 303–5; *In re Davis,* 16 B.R. 473, 475 (D.C.D.Kan.1981); *In re Thompson,* 17 B.R. 748, 753 (Bkrtcy.W.D.Mich.1982). For example, one court has stated:

> From a strictly policy standpoint, it would appear that if Chapter 11 extends the right of post-acceleration cure to the business debtor, *a fortiori* the generally more liberal Chapter 13 provisions should do the same for the consumer debtor ...
>
> In view of the debtor rehabilitation theme so pervasively laced throughout Chapter 13, ... it is difficult to perceive how as a matter of policy or logic one can justify turning back the clock on acceleration for business debtors in Chapter 11, but refuse to do the same for consumer debtors in Chapter 13.

*In re Taddeo,* 9 B.R. at 303. *Accord In re Hardin,* 16 B.R. 810 (Bkrtcy.N.D.Tex.1982); *In re Sapp,* 11 B.R. 188 (Bkrtcy.S.D.Ohio 1981).