**In re Rose GASKIN, Debtor.**

**Civ. A. No. 88–2987 (SSB).**

United States District Court,
D. New Jersey.

Oct. 17, 1990.

Jeannette M. Amodeo, David Paul Daniels, P.A., Camden, N.J., for debtor.

Office of the U.S. Atty. by Dona C. Bass, Sp. Asst. U.S. Atty., Newark, N.J., for creditor.

## OPINION

BROTMAN, District Judge.

Presently before this court is the appeal of the United States, on behalf of Farmers Home Administration, from a decision rendered in the United States Bankruptcy Court. This appeal is filed pursuant to 28 U.S.C. § 158, which affords the district court jurisdiction to hear an appeal of a final order of the Bankruptcy Court.

## I. FACTS AND PROCEDURE

Rose Gaskin, debtor, assumed a note and mortgage dated March 29, 1974. On August 30, 1978, debtor executed a separate promissory note, purchase money mortgage and assumption agreement to Farmers Home Administration ("FmHA"). At that time, debtor applied for and received an interest subsidy pursuant to an "Interest Credit Agreement" executed with FmHA. The Interest Credit Agreement was a written obligation, between creditor and debtor, to reduce the amount of interest that must be paid on a promissory note. The interest credit agreement executed by debtor reduced her monthly payment from $218.00 to $88.00.

Each Interest Credit Agreement extended for a specified amount of time. Initially, debtor's interest subsidies were granted for two year periods. At the end of each period, debtor could reapply for the subsidies. She applied for and was granted subsidies for the periods August 28, 1978 through August 28, 1980, August 28, 1980 through August 28, 1982, and August 28, 1982 through August 28, 1984. In 1984, the term of the Interest Credit Agreements was reduced to one year. 7 C.F.R. 1944.-34(g)(ii). Consequently, debtor's next subsidy was for the period August 28, 1984 through August 28, 1985.

As a result of debtor's payment delinquency, the government accelerated the mortgage note on March 12, 1985. At that time, the government declared the full amount to be due and payable. Debtor's interest subsidy subsequently expired on August 28, 1985. At that time, debtor did not file an application to renew her subsidy because her mortgage payments were being rejected by FmHA. Debtor has since applied for the interest subsidy and has in fact qualified for the subsidy. July 25, 1988 Bankruptcy Court Transcript at 14.

On February 4, 1988, debtor filed a Chapter 13 petition in bankruptcy. The parties do not dispute that debtor was delinquent on 39 out of the 114 payments due on the note at the time of the Chapter 13 filing. Creditor filed a proof of claim for mortgage arrears in the amount of $8,264.76 on March 14, 1988. Creditor's claim was computed as follows:

$ 792.00 – 9 months (December, 1984 through August, 1985) @ $88.00/month, the subsidized payment amount.

$6,540.00 – 30 months (September, 1985 through February, 1988) @ $218.00/month, the contract payment amount.

$ 754.54 – Tax advances (taxes paid through the 1st quarter of 1985).

$ 178.22 – Interest for the life of the plan.

$8,264.76 – Amount claimed by FmHA.

On May 5, 1988, debtor filed a motion to reduce the proof of claim filed by FmHA. In its proof of claim, FmHA calculated the mortgage payment at $218.00 per month, the non-interest subsidy amount, for the 30 months after August 1985 when debtor's interest subsidy expired. Debtor argued that this was an unjustified increase in the amount due and that the proof of claim should be reduced.

The United States Bankruptcy Court heard argument on July 25, 1988. The court entered an order reducing the FmHA claim to $4,351.57, using the interest subsidized monthly payment of $88.00 per month to calculate the amount due. As debtor did not dispute the number of payments in arrears, nor the interest and taxes, the court calculated the proof of claim as follows:

$3,432.00 – 39 months @ $88.00/month, the subsidized payment amount.

$ 754.54 – Tax advances (taxes paid through the 1st quarter of 1985).

$ 164.96 – Interest for the life of the plan.

$4,351.57 – Total claim allowed by the bankruptcy court.

FmHA now appeals the order of the bankruptcy court.

## II. DISCUSSION

In this appeal, FmHA contends that the bankruptcy court incorrectly reconciled the wording of the rules governing interest subsidy agreements, 7 C.F.R. 1944.34, and the section of bankruptcy code concerning the automatic stay provided under Chapter 13, 11 U.S.C. § 362(a). The issue is one of first impression. FmHA avers that a credit agreement is not renewed when an account is accelerated if the interest credit agreement expires before foreclosure is complete. 7 C.F.R. 1944.34(k)(2). FmHA further claims that the automatic stay provided for by Section 362(a) does not terminate the foreclosure. As a result, FmHA argues that the interest credit agreement is not renewable under the C.F.R., and that the proof of claim must be calculated based on the full contract rate of $218.00 per month, not the subsidized rate of $88.00 per month.

Debtor asserts that the reading of the bankruptcy court is consistent with the legislative purpose of both Section 362(a) and 7 C.F.R. 1944.34 *et seq.* Debtor claims that Section 362 provides the debtor with a chance to repay her debts under the Chapter 13 plan, and, if the plan is successful, the original mortgagor-mortgagee relationship should be restored. Debtor claims that when the plan is successful the foreclosure action terminates and the Interest Credit Agreement is reinstated. When the plan is not successful, FmHA remains in the same position with regard to foreclosure, and can pursue the full contract amount. Hence, debtor claims that the proof of claim should not be calculated on the non-subsidized payment as the FmHA may not be entitled to that amount.

As the appellate issue before the court involves the interpretation of legal precepts, the applicable standard of review is plenary. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.1985). The Interest Credit Agreement in dispute is governed by 7 C.F.R. 1944 *et seq.* Specifically, 7 C.F.R. 1944.34(k)(2), addresses the effect of acceleration of an account which has an Interest Credit Agreement:

When an account has been accelerated ... the Interest Credit Agreement will remain in effect until the final foreclosure action is completed. However, if the existing agreement expires before the foreclosure action is completed an interest credit renewal agreement will not be prepared.

If foreclosure action is dismissed, withdrawn, or terminated without sale of the property or payment of the loan in full, a renewal agreement will be prepared with an effective date as of the expiration of the previous agreement.

In the case at bar, the parties agree that the Interest Credit Agreement expired before the foreclosure action was completed, and that an interest renewal was not prepared in August of 1985. The parties also agree that foreclosure was automatically stayed when debtor filed her Chapter 13 petition. The parties' dispute revolves around the interpretation of the regulation

in conjunction with the stay provided under bankruptcy law. Specifically, the parties dispute whether the stay provisions of 11 U.S.C. 362(a) are to be interpreted as a dismissal, withdrawal or termination of foreclosure pursuant to 7 C.F.R. 1944.-24(k)(2).

Debtor argues that, although the automatic stay does not technically dismiss, withdraw, or terminate foreclosure, it does stop or suspend a foreclosure action. When the foreclosure action stops or suspends, debtor asserts that the interest subsidy should be renewed and the proof of claim calculated based on payments of $88.00 per month. Debtor argues that FmHA suffers no injury from this interpretation of the regulation. If debtor completes her bankruptcy and receives a discharge, the foreclosure will be formally terminated and the Interest Credit must revert back to August 28, 1985 under the regulation. If, on the other hand, debtor's bankruptcy is dismissed, FmHA will be in the same position it was prior to the filing of the bankruptcy pursuant to 11 U.S.C. § 349(b)(3), and FmHA can foreclose for the amount due at the contract rate of $218.00 a month.

FmHA disputes this interpretation, and claims that the automatic stay does not terminate the foreclosure, and, therefore, the interest credit agreement is not renewed under the express terms of the regulation. 7 C.F.R. 1944.34(k)(2). If the interest credit agreement is not in effect, creditor argues that its claim should reflect the full contract price due pursuant to the regulation.

In approaching a statutory analysis question, the court must interpret not only the words that the legislature has chosen, but also the evil that it has sought to remedy. In so doing the court will analyze the meaning of the words, the context in which they are found, and the purpose that the legislature had in writing them. In the instant case, the court must reconcile the meaning of 7 C.F.R. 1944.34 et seq., a provision which clearly does not anticipate the filing of a Chapter 13 petition, with the legislative intent of 11 U.S.C. § 362(a).

The purpose of Chapter 13 is to allow the debtor a respite from her debts, so that she may cure her financial difficulties. In Re Glenn, 760 F.2d 1428 at 1436 (6th Cir.1985) (quoting from the legislative history of Section 362(a)). When a bankruptcy petition is filed, an automatic stay prevents any creditor from attempting to foreclose on the debtor. If the requirements of the plan are met and the Chapter 13 is completed, the default on the note is cured and the position of the debtor, in regard to the creditor, is as if the foreclosure had never occurred. In re Wallace, 33 B.R. 29, 32 (Bkrtcy.W.D. Mich.1983). If, however, debtor does not successfully complete the Chapter 13 plan, the mortgagee would have the same rights as if the debtor had never filed a Chapter 13 petition. Id. In reaching this holding, the Wallace court relied on the legislative history of the provision: "The basic purpose of the subsection is to undo the bankruptcy case as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." 33 B.R. at 32, citing House Report No. 95–595, 95th Cong., 1st Sess. 337–38 (1977), Senate Report No. (95–989) 95th Cong. 2nd Sess. 48–9 (1978), U.S. Cong. and Admin.News, pp. 5787, 5835, 6294.

Legislative intent concerning the relationship between debtor and creditor when a mortgage has been accelerated can be determined, in part, by examination of Section 1322(b)(5) of the Bankruptcy Code. 11 U.S.C. § 1322(b)(5). Section 1322(b)(5) of the Code allows the debtor to cure the default before or after the mortgage is accelerated. In re Cheeks, 24 B.R. 477, 478 (Bkrtcy.M.D.Ala.1982). The acceleration of the mortgage when in Chapter 13 does not prohibit the debtor from curing the mortgage at the pre-acceleration terms. Id. "A post-acceleration cure does no more than return debtor to full compliance with the mortgage and restore the original mortgagee-mortgagor relationship." In re Roach, 824 F.2d 1370, 1375 (3d Cir.1987). Hence, the legislative purpose is to allow the debtor to return to pre-acceleration relationship.

 

While 7 C.F.R. 1944.34(k)(2) clearly does not contemplate bankruptcy, it does contemplate a cure of arrears when it provides, "[i]f a foreclosure action is dismissed, withdrawn, or terminated without sale of the property or payment of the loan in full, a renewal agreement will be prepared with an effective date as of the expiration of the previous agreement." The cure of arrears provided under the regulation is precisely the same type of cure provided by Chapter 13 of the Bankruptcy Code.

Consistent with the policies underlying the Bankruptcy Code and the express language of 7 C.F.R. 1944.34(k)(2), this court affirms the bankruptcy court and holds that the current interest credit agreement reverts back to August 2, 1985 for the purposes of determining FmHA's claim amount. Creditor FmHA loses nothing by this interpretation of the regulation. Debtor's bankruptcy has effectively stopped foreclosure. If she fails to discharge her bankruptcy, FmHA may immediately foreclose for the full contract amount due. If she successfully discharges her bankruptcy, FmHA's foreclosure will be dismissed, requiring FmHA to prepare a renewal agreement with debtor with an effective date as of August 28, 1985. 7 C.F.R. 1944.-34(k)(2).

Under FmHA's interpretation of the regulation, if debtor successfully discharges her bankruptcy (which would end the foreclosure action), she would still be entitled to a renewal agreement reverting back to August 28, 1985. If debtor were to discharge her bankruptcy, she would have overpaid FmHA as she would have discharged her debt at the contract price of the mortgage, $218.00 a month, instead of at the subsidized rate of $88.00 a month. FmHA would then have to credit debtor the amount overpaid or refund the overpaid amount to her. If this court interpreted the regulation as FmHA suggests, FmHA would be granted the right to collect nonsubsidized payments in anticipation that debtor will not discharge her bankruptcy. Such a result does not comport with the intent of the Bankruptcy Code or the intent of 7 C.F.R. 1944.34(k)(2).

## III. CONCLUSION

For the reasons stated above, this court affirms the order of the bankruptcy court.

An appropriate order will be entered.